Case 23-1165, Joanne Moskovic et al. v. City of New Buffalo, Michigan. Argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellant when ready. Good afternoon, your honors, and may it please the court. My name is Barrett Young and I'm appearing on behalf of the plaintiff's appellants and I would like to reserve five minutes of my time for rebuttal. Thank you. Your honors, I have two outcome determinative reversible legal errors that I would like to focus on this afternoon. The first outcome determinative legal reversible error is that the district court concluded that short-term rentals were never lawful under the initial zoning ordinance. That was wrong. The error was palpable because the city's regulatory permitting regime required compliance with the initial zoning ordinance as a condition for receiving a short-term rental permit. Now if that's the case, then the city should have never issued any short-term rental permits, but the city in actuality issued over 90 short-term rental permits in the R1, R2, R3 zoning districts. So the city necessarily understood that under the initial zoning ordinance short-term rentals were lawful and the city confirmed that understanding through its conduct. Additionally, the district court inappropriately disregarded the city's understanding and interpretation of its zoning ordinance. The district court was required to give deference to that understanding and it inappropriately did not. The second reversible legal error concerns the permits. The district court incorrectly concluded that a first-time applicant can never have a constitutionally protected property interest because of the applicant's status as a first-time applicant. That is wrong. Under the cases of this court, this court has concluded that a first-time applicant can have a constitutionally protected property interest when the government lacks discretion to issue the permit when the applicant satisfies the certain mandatory minimum criteria. That is the situation that we have here. In this case, the city's attorney and the city's corporate designee under oath admitted that the city lacked discretion to issue the permits when an applicant applied. And then number two, again, the city attorney and the corporate designee who's also the zoning administrator admitted under oath in depositions that all of the plaintiffs applied and satisfied the criteria for the permits. Therefore, under the line of cases in this case, sorry, in this court that recognizes this scenario where there can be a short, where there can be a protected property interest, the district court made a grave error on that point as well. Well, what about the fact that during the moratorium period, whether or not you met all of the requirements for the permitting process, are you saying that during that period the city was obligated to issue those permits? Well, yes, Your Honor, for a few reasons. First, the moratorium, which purported to pause the permitting regime, the permitting regime was Regulatory Ordinance 237 and then 248, the moratorium was of lower dignity than the regulatory regime. So what the city wanted to do in terms of pausing, it actually didn't use the right process to do that. And so that's the first answer to your question, Your Honor. So it sounds like you would challenge the moratorium. I mean, you're not in this appeal, but you take issue with the moratorium itself. Yes, Your Honor, but in addition the moratorium did not change the requirements under the regulatory regime. I mean, the city, I think it's the city's position that it did, but there was a way for the city to do that, but it didn't use the right process to do that. Does that answer your question, Your Honor? Yes, it does, thanks. Sure. So those are the two critical errors here, and I'm happy to take questions, but I'm also happy to go on as well. I think you can go on unless, we know how to interrupt. Thank you, Your Honor. We have particular aptitude for it. So going back to the first error, what I really want the court to focus on is this idea of a non-conforming use. So here, in the lead-up to the first regulatory regime, the plaintiffs were using their properties as short-term rentals, and under Michigan law, you have a non-conforming use if a subsequent change to the zoning ordinance or a new zoning ordinance comes into effect. You can have a non-conforming use if under the initial zoning ordinance your use was lawful. The city here improperly tried to destroy that non-conforming use, and the case really hinges on plaintiffs possessing that non-conforming use because the district court basically short-circuited the rest of the analysis by incorrectly concluding that the plaintiffs lacked a constitutionally protected interest. Our position is, yes, the plaintiffs possessed a constitutionally protected interest, actually two of them. One of them is this non-conforming use. The other is in the permits. And so it's just, the city and the district court really can't explain the anomaly that I referenced earlier about, on the one hand, this idea that short-term rentals were always unlawful, but on the other hand, they were ongoing in the city, both publicly, but then also through the regulatory ordinance, confirmed that they were lawful. And then the other part of this, Your Honors, assuming you believe me and are persuaded on the non-conforming use point and on the short-term rental point, there's also the issue of rational basis. And on that point, Your Honors, the city lacks a legitimate government purpose regarding its new zoning ordinance, Zoning Ordinance 253. And just to be clear, Your Honors, we're not contesting 253 in its entirety. Rather, we're contesting a very specific part of it. There's a part of it that seeks to retroactively destroy the non-conforming use that plaintiffs possessed, and the city lacked the authority to do that because the Michigan Zoning Enabling Act protects non-conforming uses. And so the city, what it really seeks to do is launder an impermissible legal, an impermissible government purpose within a larger permissible statute, or in this case, ordinance. And I would challenge my brother council to explain how it could have a legitimate purpose in going against a Michigan statute passed by the Michigan legislature. And again, we don't contest the city's authority and option to regulate or even prohibit short-term rentals going forward. What we take issue with and what the district court did not grapple with is this very narrow question about this one section, Section 20-8 in 253, that seeks to improperly destroy the non-conforming use. So in your mind, or if I understand your argument correctly, the non-conforming use is the linchpin, not whether or not they had permits for the non-conforming use, because none of the plaintiffs had permits, correct? Yes, Your Honor. None of the plaintiffs obtained permits, but whether or not they possessed permits does not affect whether they had the non-conforming use. The permits concern the city's regulatory ordinance, and a regulatory ordinance is independent of, orthogonal to the zoning ordinance and the possession or lack of possession of the non-conforming use. The city can't attack non-conforming uses with the permitting regime. The analysis for non-conforming use is totally separate from and is not affected by the permitting regime, though that is what the city argues. I only have a few moments or a few seconds left. If the panel has any questions, otherwise I'll come back on rebuttal. I don't believe we have any questions at this point. Mr. Zaleski? Yes. Good afternoon, Your Honors. May it please the court, I am Matthew Zaleski on behalf of the city of New It appears that the one thing the parties are in agreement on here is that the key issue in this case is whether the plaintiffs had a non-conforming use under Michigan law to use their properties as short-term rentals at the time that the moratorium was adopted and at the time that the zoning ordinance 253 was established. The city has consistently maintained that they did not have any lawfully established non-conforming use of their properties in short-term rentals at that time. And as we know now, they do not have the ability to establish one as a short-term rental and they've conceded today they are not challenging a basic premise of ordinance 253. As Judge Jarbo pointed out and the city has pointed out, zoning ordinance section 1.4, existing as far back as the case history of this case goes, states that uses that are not specifically authorized are prohibited. Ones that are not specifically permitted are prohibited. And there is a path for establishing a use determination if a specific use is not identified in the zoning ordinance. And that path is one of two things. You get a determination from the zoning administrator or you go to the zoning board of appeals for a variance to determine that a particular use should be allowed or is comparable to a use that is allowed. None of the plaintiffs in this case pursued that determination. In fact, every plaintiff that's relevant in this case pursued a short-term rental permit after the moratorium was established or in some cases after this litigation was filed. They were engaged in short-term rentals though, without a permit, is that the fact? Your Honor, the plaintiffs have attested to the idea that they either were short-term renting their properties in some way or had desired to do so. So ultimately that would be an unlawful use of the property, but the city simply was not enforcing the ordinance. So if the property interest could arise from actual use of the property as short-term rentals, we don't know that from this record? Your Honor, I think to some extent the factual record was sketchy to the extent that they were using the properties as short-term rentals, but we would submit that it doesn't matter. Well, it might not. I didn't mean to suggest that it did. I was just asking whether... Right. Your Honor, a fair number of the plaintiffs had some pretty limited evidence and some again were kind of expressions of hope that they had bought the properties in anticipation of using them. So maybe every plaintiff was not in the same situation. That's correct. That is, I think, fair to assume based on what we know. So what is the city's position as to when the plaintiffs should have applied? I assume you're saying if they had applied and obtained a permit, they would have some sort of a vested property interest? Well, so this is this difficult juggling of the regulatory process versus the zoning process. And I'll answer that question a couple of ways. Certainly, they needed to obtain the regulatory permit once Ordinance 237 was established. That was their path for lawfully establishing a short-term rental at their property. What about before that date? What was required? Prior to that time, it just simply wasn't addressed in either ordinance. It was not regulated. So they could have done the short-term rentals without any approval from anywhere prior to the date of the passage of Ordinance 237? It's true that they may have, but that's not to say that it was permitted under the zoning ordinance or established to use since it wasn't specifically provided for. So they would have had to get some sort of zoning approval prior to that date in order to... Exactly. Our position would be that they would have had to invoke their options under Section 1.4 of the zoning ordinance. So 1.4 was the original regulation, and then it's supplemented by this Ordinance 237, and then the moratorium comes after that. Correct. And as we can be aware, short-term rentals are a relatively new phenomenon. So many things that cities do encounter from a variety of spectrums. So it became a bigger issue, and the city's grappling with what to do about this. And so their first attempt at doing something about the short-term rentals is they're realizing that these things are out there, they're potentially... This is a small community. We're talking between 2,000 and 3,000 residents, or homes, I should say. And so it's putting pressures on the services. They want to gain some control over it. So they start with the regulatory ordinance, and that is establishing regulation of an activity at the property. The establishment of a regulatory ordinance does not create a use. It's not zoning. And so the plaintiffs are suggesting that because the city allowed this regulatory program that it somehow conceded that short-term rentals were a permitted use. It did no such thing. The city simply decided to regulate short-term rentals as an activity throughout the city, not specific to any particular zoning districts. They were not establishing it as a matter of zoning. An imperfect comparison that I dreamed up ahead of today was, you think about food trucks. Those things are going around communities. Communities license them or regulate them. Sometimes the food truck parks at the same gas station or whatever for a long period of time. That doesn't mean that it is a use of wherever the food truck is parked. Same thing here. Using the house as a short-term rental or conducting that activity at the house does not establish a zoning use, unless you're moving the regulation into the zoning ordinance. So I'm just saying the permitting requirement is not really relevant to whether or not there's a zoning use or not. The city acknowledges that they are two distinct regulatory frameworks. So if you had a non-conforming lawfully established use, then granted you can't maintain the activity unless you have the permit, but they are two separate questions. We do acknowledge that. This is not perhaps related to the legal issues in this case, but I'm just puzzled why such a small community would have a demand for short-term rentals that cause problems. Why are people coming to this little community? Oh, Your Honor, thank you for that question. New Buffalo is a very desirable community. It's right on the banks of Lake Michigan. It's just about an hour from Chicago, so you get a lot of the Chicago people coming to get away from city life. That's Michiganders now. I grew up in a small town, and I cannot imagine short-term rentals being a problem there. It's hard to find a parking spot there during the summer. So addressing this interplay a bit more, because I understand it's very tangled. We get to this question that they're asking about the non-conforming use section of Ordinance 237, the 20-18, I believe, where plaintiffs are saying, look, this is retroactively destroying non-conforming uses. Of course, we don't agree with that because the uses were never lawfully established in the first place. They were never recognized permitted uses. To the extent that the city in that ordinance section is acknowledging that those existing short-term rentals that are existing under the regulatory scheme are allowed to exist as non-conforming, they're dealing with the tension between these two regulatory schemes. They're saying, okay, we've already allowed these as a matter of a regulatory ordinance. Now what do we do with them? That's getting us into the vested rights in a rental permit. Once you have your first-time one, then there's an expectation you can continue. So the city essentially tolerates what's existing there, saying we're going to designate these as an existing non-conforming use now that we're regulating them as a matter of zoning. But that's the first policy statement as a matter of the zoning ordinance that the city ever makes pertaining to short-term rentals. And then it says, okay, we've got these. We're done. No more in R1, R2, or R3, but we'll allow them in these other zones. So then another key issue related to this is plaintiffs' attempt to locate short-term rentals within the definition of a single-family dwelling. And that's a significant issue because they're saying, look, it doesn't have to be expressly mentioned, but it's couched within the idea of a single-family residence. The Michigan courts that we look to for guidance in statutory interpretation and ordinance interpretation have been coming down soundly and consistently saying that short-term rental is a commercial activity. It is not a residential activity. And whether it's in the context of private restrictive covenants, ordinances, short-term rentals, timeshares, any form of interval ownership, the Michigan Court of Appeals, as I identify in the brief, has been consistently coming down saying short-term rentals, for-profit types of use of the property, is not residential in character, therefore is not expressly permitted within a single-family residential zone. And so I would ask that the court uphold that approach that Judge Jarboe adopted. Now she took a slightly different approach by looking also at the definition of single-family and looked at the permanence of the family versus the transient nature of the short-term renters. That's certainly a valid approach as well. I think it's really kind of saying the same thing multiple ways. I think that the state courts have been coming out very strongly on this commercial use idea. Judge Jarboe acknowledged that. And the permanency versus temporariness is part and parcel of that. On this issue of the first-time permit, turning to that, the city certainly contests plaintiffs' interpretation of this court's precedence on whether a person would have a vested right in a first-time permit. I think the case law is quite consistent, particularly if we look at Silver or Triumph, that the case law that they're citing says that where a decision is discretionary, there's no vested right in the issuance of a permit. But it doesn't hold the reverse. It doesn't say that where there is a ministerial non-discretionary duty to issue a permit, that it necessarily vests a right in the issuance of the permit. Again, we look to the state law for that very clearly, is what this circuit's precedence constructs. And the state law says that a vested right in a permit does not vest until it has been issued and substantial construction has commenced. In this case, the plaintiffs have not obtained a permit at all. Even if they had established a protected property right for purposes of their due process claim, we would submit that their due process claim fails on the final piece of whether there's arbitrary and capricious action. This court came down very strongly a couple years ago in the Gulf Village case, stating that a substantive due process shocks the conscience standard. It's going to be very difficult to meet in the zoning context and the conduct has to be so shocking as to shake the foundations of the country. Here in this case, we have an ordinance that was enacted that simply regulates a particular type of use or activity in the city, an emerging use. It acknowledged what to do with the people who had actually applied properly to establish the activity there and followed the spirit of the Michigan Zoning Enabling Act by acknowledging those existing regulatory permitted short-term rentals as non-conforming uses. I'll just briefly point out, too, to the extent that the plaintiffs have cited testimony from the city manager or the legal opinion of the then city attorney as to whether or not they believed that short-term rentals were permitted uses. First of all, the citations to the city manager's deposition testimony are a bit out of context, as I presented in our briefing, but also he is a lay witness. Indeed, the city attorney was a lay witness, too, in this case. Therefore, their comments are nothing but a piece of fact material to be weighed with everything else in the case. Ultimately, I think that they're not looking at it from the perspective of the lawyer, use versus activity and such. There just simply is no historical pattern of the city interpreting short-term rentals as a lawful permitted use through any zoning ordinance administrator interpretations, the Zoning Board of Appeals, or anything else. At most, it is a tolerance or a non-enforcement that they ultimately started dealing with with the regulatory ordinance. I thank the court for your time and the opportunity to be here today, and I urge you to affirm the district court. Could you maybe start off by explaining to us what about the city's conduct in this permitting process makes it arbitrary and capricious? Yes, Your Honor. Just to be clear, we take issue with 253, not every part of this, but a specific part of 253, 20-8, which attempts to add requirements for what it takes to have a non-conforming use. Michigan law and Michigan Zoning Enabling Act set the requirements for that. The city is improperly attempting to add the requirement that to possess a non-conforming use, in this case, a plaintiff or a landowner needs to also have a permit. The city simply lacks the authority to add requirements to a determination that a higher authority, the Michigan legislature and Michigan case law has set. Also, as I was referencing before, the regulatory regime does not affect the zoning regime in terms of whether a use was lawful under the zoning regime. The regulatory regime, as I think Brother Counsel admitted, it's separate, and it doesn't add or subtract from the zoning regime. Does that answer the question, Your Honor? I guess I maybe need an explanation as to how that satisfies the shocking the conscience. It shocks the conscience in the sense that the municipality is attempting to override the Michigan legislature and the case law of Michigan. That, I think, is shocking that a municipality would have the gall to say, to thumb its nose. Is there a case law that suggests that a city, if we accept that that's what the city's, your characterization of the city's actions, is there a case law that says that that meets the standard? I don't have a case off the top of my head, Your Honor, but I believe in our brief we go into examples and factors for what shocks the conscience. I think what's also important here on the shock the conscience slash rational basis, because it's two sides of the same coin, is what I was getting at earlier regarding with rational basis, you need to have a legitimate or the government needs to have a legitimate purpose. Here, there is no legitimate purpose. Didn't they talk about the traffic? I don't have them memorized, but quite a few factors is what is driving their actions. Yes, Your Honor. That works for prospective regulation of the short-term rentals, but that doesn't work for the retroactive destruction that the city has done here, because it's not a legitimate purpose for the municipality to flaunt its nose at the Michigan Legislature. I want to press you a little further on that. That whole argument strikes me as odd, because zoning decisions are traditionally a local decision. I don't know of a state legislature that decides questions about how a municipality should zone its area. Yes, Your Honor, you're right. The Michigan Legislature, however, has set a floor. The Michigan Legislature has said, essentially, hey, municipalities, you can zone, but when you amend your zoning ordinance or you pass a new zoning ordinance, you, municipalities, lack the option to destroy vested property rights that have already been created and obtained under the earlier zoning ordinance. The Michigan Legislature has removed that option, that authority from municipalities to do that. But I just want to emphasize, prospectively, that's not what we take issue with. It's the retroactivity that we contest and that the district court did not grapple with properly. We thank you both for your arguments. We'll consider the case carefully. Thank you.